UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY HENDRIX,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>DANIEL F. MARTUSCELLO, JAMES O'GORMAN, JOSEPH BELLNIER, PATRICK REARDON, JUSTIN THOMAS, and JOHN COLVIN,<br><br>　　　　　　Defendants. | Case No. 9:20-cv-00743-GTS-TWD |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' BILL OF COSTS**

Plaintiff, Troy Hendrix, respectfully files this Opposition to Defendant's Bill of Costs (Dkt. 139). Mr. Hendrix is an indigent prisoner who has been imprisoned by DOCCS for the past 18 years and kept in solitary confinement under administrative segregation status for almost 16 of those years. Mr. Hendrix brought good faith claims to challenge his continued solitary confinement, which was, in large part, unchallenged by Defendants at the motion to dismiss stage and litigated up to the summary judgment phase. On summary judgment, this Court called the case a "close question." Dkt. 135 at 38. Following the Court's summary judgment order, which is currently under appeal, Defendants have sought ***more than $11,000*** in costs from Mr. Hendrix, which is an astronomical sum compared to Mr. Hendrix's weekly income of $3.

Defendant's bill of costs should be denied because Mr. Hendrix brought this matter and litigated in good faith, important benefits were conferred upon the public, imposing costs upon Mr. Hendrix present a substantial burden due to Mr. Hendrix's indigency, the imposition of costs will unduly inhibit future challenges, and Defendants, as agents of the New York State Department of Corrections and Community Supervision ("DOCCS"), have enormous resources.

1

## BACKGROUND

Mr. Hendrix has been imprisoned by DOCCS since 2006. Dkt. 132-1 ¶ 1. From 2006 until July 2022, DOCCS kept Mr. Hendrix in solitary confinement on administrative segregation status, where he was limited in everything he did and could not even obtain a prison job.

On July 2, 2020, represented by pro bono counsel, Mr. Hendrix initiated this action, alleging DOCCS personnel played a role in subjecting him to continuous confinement in administrative segregation for almost 16 years. Dkt. 1. Mr. Hendrix asserted, among other things, constitutional claims under the Eighth and Fourteenth Amendments. *Id.* Mr. Hendrix asserted those claims in good faith and based on established precedent from the Second Circuit and this District. *See, e.g.*, *Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017); *H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355 (N.D.N.Y. 2020), *aff'd* 758 Fed. App'x 196, 200 (2d Cir. 2019).

Throughout discovery, Plaintiff was judicious in his requests and only requested necessary and relevant discovery. Plaintiff issued one set of document requests and interrogatories, took seven depositions of the named parties and Defendants' expert, and agreed not to depose Defendant Annucci. Liu Decl. ¶¶ 2-3; Dkt. 76. In an effort to efficiently make use of the parties' time and resources, Plaintiff also proposed to join several depositions of defendants who were named in similar lawsuits, including the depositions of John Colvin, James O'Gorman and Joseph Bellnier[1]. Liu Decl. Ex. A. Plaintiff took an additional deposition of a non-party witness after Defendants revealed that witness's involvement in Mr. Hendrix's confinement for the first time in their summary judgment papers. Dkt. 122.

---

[1] The Bellnier deposition ultimately was not taken jointly due to scheduling issues that arose in the related case.

On March 6, 2024, this Court granted Defendant's motion for summary judgment and entered judgment against the Plaintiff. Dkt. 135-136. In its 54-page summary judgment decision and order, this Court acknowledged that "this case presents a close[] question." Dkt. 135 at 37.

On April 25, 2024, Mr. Hendrix filed a Notice of Appeal. Dkt. 138. On the same day, Defendants filed a bill of costs for recovery of costs in the amount of $11,184.69 in connection with 12 depositions taken in this case, including the full cost of the two joint depositions. Dkt. 139.

Defendants' bill of costs greatly exceeds Mr. Hendrix's ability to pay. Mr. Hendrix currently receives only $3.00 per week as wages from his job in prison. Liu Decl. Ex. B. He has no other income or assets aside from the funds in his prisoner account, which presently total $359.05. *Id*.

## **LEGAL ARGUMENT**

**I.   The Court Should Deny Defendants' Bill of Costs Because Mr. Hendrix Is Unable to Pay Them, Now or In The Future, Mr. Hendrix Litigated in Good Faith, and the Imposition of Costs Would Deter Future Civil Rights Plaintiffs.**

Rule 54(d) is discretionary. It states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—*should* be allowed to the prevailing party." Fed. R. Civ. P. 54(d) (emphasis added). Critically, the Rule *does not* state that costs "must" or "shall" be awarded. *Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79, 80 (E.D.N.Y. 1971) ("the statutory language is permissive, rather than mandatory"). Instead, courts have "discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 43, 442 (1987); *McDonnell v. Am. Leduc Petroleums, Ltd.*, 456 F.2d 1170, 1188 (2d Cir. 1972) ("It is well-settled that under Fed.R.Civ.P. 54(d), the awarding of costs is discretionary with the trial judge."). "A court need not award costs if it finds that such

an award would be inequitable." *Bekiaris v. U.S.*, 1998 WL 734362, at *1 (S.D.N.Y. Oct. 20, 1998). In determining whether to deny a motion for costs, courts in this Circuit consider "plaintiff's indigency or financial hardship and plaintiff's good faith in bringing the action." *Id.* Courts can also consider, among other things, "the public importance of the case [and] the difficulty of the issues" presented by the case. *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001).

Here, Mr. Hendrix is incapable of paying the more than $11,000 Defendants seek, either now or in the future. As Mr. Hendrix's prison account statement shows,[2] he receives a meager $3 per week in income, plus occasional other deposits. Liu Decl. Ex. B. This comes nowhere close to covering the costs that Defendants are seeking. At the rate of Mr. Hendrix's earnings, it would take Mr. Hendrix over 3600 weeks, or over 69 years, to pay off the debt. Mr. Hendrix has no other means to generate significant additional income while he continues to be incarcerated under a life sentence. Quite simply, Mr. Hendrix will never be able to pay the costs Defendants seek.

Courts routinely exercise their discretion to deny costs when a party demonstrates an inability to pay. For example, in *Portillo v. Webb*, 2024 WL 1621066, at *2 (S.D.N.Y. Apr. 15, 2024), the court vacated an award of costs entered against an indigent inmate who brought Section 1983 claims against correctional officers for a violation of his rights, finding it would be "virtually impossible" for the plaintiff to pay the costs of approximately $3500. The plaintiff earned less than $3 per week in his prison job and had a balance of $128.20 in his inmate account. *Id.* Mr. Hendrix's circumstances are no different, and imposing costs on him would be "inequitable as it constitutes a severe financial hardship on someone who is already financially

---

[2] A prisoner may "satisfied his burden of proving that he is indigent by providing his Inmate Account statements." *Portillo v. Webb*, 2024 WL 1621066, at *2 (S.D.N.Y. Apr. 15, 2024)

4

destitute." *Wisniewski v. Claflin*, 2008 WL 11412045, at *1 (E.D.N.Y. Dec. 10, 2008); *see also, e.g.*, *Nicholson v. Fischer*, 2018 WL 6616333 at *2 (W.D.N.Y. Dec. 18, 2018) (denying costs against incarcerated plaintiff who "receives money only through occasional gifts from friends and family); *Bucalo v. E. Hampton Union Free Sch. Dist.*, 238 F.R.D. 126, 130 (E.D.N.Y. 2006) (denying costs where imposing a large award on "an individual plaintiff of apparently modest means would result in financial hardship"); *Bekiaris*, 1998 WL 734362, at *1 (S.D.N.Y. Oct. 20, 1998) (denying costs against plaintiffs with annual income of less than $30,000).

This is particularly true "where there is a wide disparity of resources between the parties." *Eldaghar v. City of New York Dept. of Citywide Admin. Services*, 2010 WL 1780950, at *2 (S.D.N.Y. May 4, 2010). Defendants are DOCCS employees who are indemnified and were represented by the Office of the Attorney General.³ DOCCS possesses a massive budget of $3.5 billion for the current fiscal year.⁴ In contrast to Mr. Hendrix's limited resources, Defendants have much greater resources to bear the costs of the litigation. *See, e.g.*, *Rizzo v. Applied Materials, Inc.*, 2019 WL 311614, at *2 (N.D.N.Y. Jan. 24, 2019) (denying costs where "[p]laintiff is an individual litigant with extremely limited resources… while [d]efendants are large corporations"); *Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79, 81 (E.D.N.Y. 1971) (disallowing 98% of costs requested because where the parties are "very unevenly matched in size, resources, and stability, it would be unfortunate to use the possible taxation of costs as a sword of Damocles and so prevent a good faith defense").

---

³ DOCCS Directive #6930, *available at* https://doccs.ny.gov/system/files/documents/2022/02/6930_0_0.pdf, ("When a timely Request for Representation is received, the OAG [Office of Attorney General] will take appropriate steps to protect the DOCCS defendant's rights.").

⁴ Corrections and Community Supervision, Department of, New York State Division of the Budget, https://www.budget.ny.gov/pubs/archive/fy24/ex/agencies/appropdata/CorrectionsandCommunitySupervisionDepartmentof.html#:~:text=Budget%20Highlights,8.26%20million%20from%20FY%202023.

Furthermore, Mr. Hendrix pursued this action in good faith and with the sincere belief that he would prevail on the merits. At the time this action was initiated, there was established precedent from the Second Circuit and this District which supported Mr. Hendrix's constitutional claims concerning his lengthy solitary confinement. *See, e.g.*, *Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017) (procedural due process claim based on lack of meaningful periodic reviews survived summary judgment); *H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355 (N.D.N.Y. 2020) (procedural due process and Eighth Amendment conditions of confinement claims based on 23 years of administrative segregation survived summary judgment), *aff'd* 758 Fed. App'x 196, 200 (2d Cir. 2019). And although Mr. Hendrix's claims were dismissed on summary judgment (which is subject to a pending appeal), this Court agreed that this case presented a "close question." Dkt. 135 at 38. Because "several of [Mr. Hendrix's claims remained until the Court awarded defendants summary judgment" and "there has been no basis… [to] conclude that [his] action was frivolous in any way or pursued in bad faith," the Court should deny Defendants' motion for costs. *Wisniewski*, 2008 WL 11412045 at *2; *see also, e.g.*, *Moore v. Cnty. of Delaware*, 586 F.3d 219, 222 (2d Cir. 2009) (denying costs where case involved "good faith prosecution of claims alleging government misconduct"); *Eldaghar*, 2010 WL 1780950, at *3 (same); *Portillo*, 2024 WL 1621066 at *2 (denying costs where there was "no basis to conclude that Plaintiff brought these claims in bad faith"); *Nicholson*, 2018 WL 6616333 at *2 (same).

Plaintiff's efforts to limit costs should also be taken into account. During discovery, Plaintiff's counsel proposed joining depositions for certain defendants who were involved in other pending cases. This avoided duplicative depositions and reduced the cost and time burden for the parties. *See Eldaghar*, 2010 WL 1780950 at *3 ("Plaintiff's efforts to limit such costs support a finding that he has litigated in good faith."); *Rizzo*, 2019 WL 311614 at *2 ("case was

6

litigated in good faith" where plaintiff's counsel took actions that "necessarily reduced" "costs for all parties").

Finally, Mr. Hendrix's claims involved matters of public importance and presented difficult issues. *Whitfield*, 241 F.3d at 270. Solitary confinement has been an important topic of public discussion in recent years, as demonstrated by the legislature's consideration and ultimate passage of the HALT Act, which restricts the practice of solitary confinement in New York, including limiting the time spent in solitary confinement to a maximum of 15 consecutive days and a total of 20 days within any 60-day period. *See* S.B. S2836, 2021 Leg. Sess. (N.Y. 2021); State B. A02500, 2019 Reg. Sess. (N.Y. 2019). Mr. Hendrix's lawsuit was one of several cases that are pending in this District which served to shed light on the conditions of administrative segregation within DOCCS facilities.[5] It presented difficult, "close question[s]" for the Court to grapple with, which this Court acknowledged in its 54-page summary judgment decision, and as evidenced by the differing summary judgment decision recently issued by another judge of this Court. *See* Memorandum-Decision and Order, Dkt. 103, *Williams v. O'Gorman*, 20-cv-1417 (N.D.N.Y.). These decisions further develop the law in this area and help define the constitutional rights of other prisoners who may be similarly subjected to lengthy periods of solitary confinement.

To impose more than $11,000 in costs on Mr. Hendrix under these circumstances would "serve to chill individual litigants of modest means seeking to vindicate their individual and collective rights." *Rizzo*, 2019 WL 311614, at *2; *Ferguson v. McDonnell Douglas Services, Inc.*, 1996 WL 705875, at *1 (N.D.N.Y. Nov. 29, 1996) (same). Other potential civil rights litigants with good faith, meritorious claims but lacking financial resources would be strongly

---

[5] *See, e.g.*, *Woods v. Annucci*, 20-cv-570 (N.D.N.Y.); *Williams v. O'Gorman*, 20-cv-1417 (N.D.N.Y.); *Pearson v. Annucci*, 20-cv-1175 (N.D.N.Y.).

disincentivized to bring claims and to vigorously litigate them in an effort to vindicate their rights if they are required to pay substantial litigation costs for all unsuccessful actions. While requiring prisoners to make economic decisions about filing lawsuits does not itself deny prisoners access to the courts, imposing costs upon indigent civil rights litigants who bring good faith claims does unduly burden future challenges.

    II.    **The Court Should Reduce the Award of Costs Because Some Depositions Were Taken Jointly, and Because of Defendants' Discovery Misconduct and Mr. Hendrix's Indigency.**

If Court grants costs to Defendants (which it should not), the Court should reduce the award by at least $2,041.16 because two depositions were taken jointly with other cases and because of Defendants' discovery misconduct. The Court should also exercise its discretion to further reduce the award because of Mr. Hendrix's indigency.

Defendants requested the full costs for Mr. Colvin and Mr. O'Gorman's depositions. *See* Dkt. 139-1; 139-2 at 4, 6. Mr. Hendrix should not bear the full costs of these joint depositions and the costs should be evenly divided between the relevant cases. Mr. Colvin's deposition ($799.15) was taken jointly with one other case, so the amount taxed to Mr. Hendrix should be reduced by half ($399.58). Liu Decl. Ex. C at 8:5-9. Mr. O'Gorman's deposition ($1,521.05) was taken jointly with two other cases, so Mr. Hendrix should only pay one-third of the costs ($507.02, representing a reduction of $1,014.03). Liu Decl. Ex. D at 10:7-12.

Further, the cost of the deposition of Kevin McCarthy should not be allowed because of Defendants' discovery misconduct. As this Court found, Defendants "should have disclosed McCarthy earlier as an individual likely to have discoverable information that Defendants may use in support of their defenses." Dkt. 135. Because Defendants were not forthcoming with the extent of Mr. McCarthy's involvement during discovery, Plaintiff was required to take Mr.

McCarthy's deposition after the discovery period. Defendants should not be allowed to benefit from their "duplicitous conduct and lack of transparency" during litigation. *Gusinski v. Genger*, 2013 WL 12446826, at *2 (S.D.N.Y. Mar. 15, 2013) (vacating an award of costs "[i]n light of [a party's] misconduct during the litigation. The Court should disallow $627.55 in costs in connection with Mr. McCarthy's deposition.

Finally, the Court should exercise its discretion to further reduce any award because of Mr. Hendrix's indigency, as explained above. Courts in this Circuit have significantly reduced the award of costs for indigent litigants. *See, e.g.*, *D'Attore v. City of New York*, 2014 WL 173482, at *2 (S.D.N.Y. Jan. 8, 2014) (reducing award of costs from $1036.76 to $250.00 due to plaintiff's indigency); *Karmel v. City of New York*, 2008 WL 216929, at *5 (S.D.N.Y. Jan. 9, 2008) (reducing award of costs by over $22,000 due to plaintiff's indigency); *Biggs v. Metro-N. Commuter R.R.*, 2013 WL 362892, at *2 (D. Conn. Jan. 30, 2013) (reducing award of costs by 50% due to plaintiff's indigency); *Guinn v. Commodore Cruise Line, Ltd.*, 1998 WL 289151, at *1 (S.D.N.Y. June 2, 1998) (same).

### III. The Court Should Stay Enforcement of Any Award Pending Mr. Hendrix's Appeal

If the Court grants Defendants' Bill of Costs, Mr. Hendrix respectfully requests that the Court stay enforcement of any award pending resolution of Mr. Hendrix's appeal. While an appeal does not automatically stay the taxation of costs, the Court has discretion to stay the proceedings pending an appeal. *See, e.g., Howell v. NYC Leadership Acad., Inc.,* 2008 WL 5336891, at *4 (S.D.N.Y. Dec. 20, 2008) ("it is reasonable to stay enforcement of the award to await the disposition of any appeal.")

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Bill of Costs, or alternatively reduce the amount of costs. The Court should also stay enforcement of any award pending resolution of Mr. Hendrix's appeal.

Respectfully submitted,

Dated: May 30, 2024

By: */s/ Cassandra Liu*
Ellen M. Dunn, Bar No. 703251
Cassandra Liu, Bar No. 701850
Andrew Kunsak, Bar No. 5901236
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
edunn@sidley.com
cassandra.liu@sidley.com
akunsak@sidley.com

Leslie Kuhn-Thayer, Bar No. 704275
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7897
Facsimile: (312) 835-7036
lkuhktha@sidley.com

*Counsel for Plaintiff Troy Hendrix*

To: All counsel of record (via ECF)